UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,          Case No. 1:07-cr-239-5

v.                HON. JANET T. NEFF

JOHN ALLEN CAMPBELL,

   Defendant.

_____/

**OPINION**

Now pending before the Court is defendant's Motion to Alter Judgment, requesting that this Court either order no restitution or reduce restitution to $30,126 (Dkt 427). The government has also briefed the issue, recommending that this Court set restitution at $140,461.96 (Dkt 428). At this Court's request, defendant filed a supplemental brief on December 11, 2009 (Dkt 448). For the following reasons, the Court grants in part and denies in part defendant's Motion to Alter Judgment and imposes joint and several restitution upon defendant in the total amount of $30,126.

I. BACKGROUND

On March 6, 2008, a six-count Superseding Indictment was filed in this Court, adding defendant Campbell and another co-defendant to Count 1 of the original Indictment (Dkt 71). Count 1 charged defendants with conspiring to defraud the Internal Revenue Service (IRS) in violation of 18 U.S.C. § 371. Defendant pleaded guilty to the charge on April 16, 2008, stipulating to the facts

set forth in the plea agreement and the facts in Count 1 of which he had personal knowledge (Plea Tr. at 16).

Specifically, defendant admitted that from at least 1999 through at least 2006, he was a partner with the law firm of Miller, Canfield, Paddock & Stone, PLC, and that during a portion of this period, he was the resident director of its Kalamazoo offices (Plea Tr. at 21). During these years, defendant agreed with the principals and associates of an insurance company in the United States Virgin Islands, known as Security Trust Insurance Company (STIC), to market, promote and sell fraudulent tax shelters, including so-called loss-of-income (LOI) insurance policies (*id.* at 21-22). Defendant's admitted purpose was to defraud the United States and impede the lawful functions of the IRS by assisting United States taxpayers in committing tax evasion and other tax crimes (*id.* at 22). Defendant and his co-conspirators sold the so-called insurance policies to United States taxpayers as a tax-deductible product, with the understanding that the purchasers would have approximately 85 percent of their premiums returned to them in a nontaxable manner (*id.*).

In the Sentencing Memorandum the government filed before sentencing, the government recommended that the Court impose joint and several restitution upon defendant in the total amount of $1,674,069. The government arrived at this figure by adding together two tax losses: (1) the $1,633,306 tax loss that defendant caused the IRS relating to co-defendant Oskar René Poch's LOI policy purchases; and (2) the $40,763 tax loss that defendant caused the IRS relating to an LOI purchase by Daniel Swetich, one of Mr. Poch's employees (Dkt 395 at 17). Defendant opined in his Sentencing Memorandum that this Court's order of restitution should be "nominal," given that the amount of Poch's tax liabilities then remaining was only $217,830.44 (Dkt 395 at 11-12, n. 13). The probation officer recommended restitution in the amount of $217,830.44.

At sentencing on November 2, 2009, the government represented that Poch had since paid the $217,830.44 balance (Sent. Tr. at 4). The government requested that the restitution figure therefore be modified to reflect only what is outstanding for Swetich ($40,763) and that defendant Campbell be held liable with Swetich, jointly and severally, for that outstanding amount (*id.*).

The Court queried whether the joint and several character of its restitution order would affect defendant's exposure for liability to Poch in a civil suit Poch filed against defendant and his former law firm (Sent. Tr. at 4-5). Neither the government nor defense counsel was certain of the impact, if any (*id.,* 5-8). Accordingly, the Court indicated from the bench that it would order defendant to pay restitution in the amount of $40,763, jointly and severally with the co-defendants in this case; however, the Court granted counsel 14 days to examine and brief the issues relating to defendant's restitution (*id.,* 6, 28-30). The Judgment of Sentence indicated that the issuance of a restitution order would be deferred until December 16, 2009 (Dkt 413).

In the Motion to Alter Judgment pending at bar, defendant argues that the government has been entirely compensated for the amount of loss associated with co-defendant Poch and that no restitution should be imposed on defendant relating to the Poch loss amount (Dkt 427 at 3-5). With regard to the loss associated with Swetich, defendant argues that this Court should not impose restitution on defendant where a June 2006 tax court settlement between Poch and the IRS resulted in a disallowance of the $90,000 premium associated with Swetich (*id.* at 2). Alternatively, defendant requests that the amount of restitution imposed for the loss related to Swetich be reduced in light of a revised IRS report that amended the actual tax amount assessed to $30,126 (*id.*).

In its Sentencing Memorandum on Restitution, the government opines that "it is clear that defendant Campbell is responsible for causing the tax loss related to Oskar René Poch's

loss-of-income purchases" (Dkt 428 at 1). However, because Poch has paid the tax loss related to these purchases, the government agrees with defendant that the Court cannot properly impose restitution in connection with these purchases (*id.* at 1, 6).

The government advocates ordering defendant to pay $41,755 in restitution to the IRS in connection with the taxes that Swetich avoided as a result of participating in the loss-of-income insurance tax shelter. The government concedes that the actual tax amount assessed against Swetich is $30,126 but asserts that interest of $11,629 should be added to the restitution amount (Dkt 428 at 6).

The government also argues, for the first time, that this Court should impose restitution for "all of the tax losses that [defendant] caused relating to other Security Trust clients" (Dkt 428 at 7). The government identifies three clients, Jeffrey Baeten, Hartwig Huemer, and Jared Gerstenblatt, who purchased LOI policies from Security Trust (*id.* at 7-8).

The government represents that salesman Dale Pinkston sold Baeten and Huemer their policies and that Pinkston had received a copy of the deceptive legal opinion letter defendant authored for use in marketing the LOI product (Dkt 428 at 7). According to the government, Baeten spent "over $85,000" on three LOI policies, which, using a presumptive tax rate of 28 percent, resulted in an approximate tax loss to the IRS of $24,336 for the policies that Baeten deducted on his tax returns, plus $23,819.39 in interest (*id.*) According to the government, Huemer spent "at least $35,000," which, using a presumptive tax rate of 28 percent, resulted in an approximate tax loss to the IRS of $9,800 for the policy that Huemer deducted on his tax return, plus $5,535.43 in interest (*id.*).

4

The government represents that Gerstenblatt purchased a policy for $75,000 and that defendant "participated" in marketing the product to Gerstenblatt (Dkt 428 at 8). Again using a presumptive tax rate of 28 percent, the government indicates that the approximate tax loss to the IRS for the policy that Gerstenblatt deducted on his tax return is $21,000, plus interest of $14,216.14 (*id.*).

The government concludes that this Court should impose an additional $98,706.96 in restitution on defendant in connection with the tax losses arising from the LOI policy purchases and deductions of these three STIC clients (Dkt 428 at 8). The total restitution recommended by the government is therefore $140,461.96.

The Court directed defendant to respond to the government's brief, particularly addressing the propriety of imposing restitution for the tax loss related to other Security Trust clients (Dkt 438). Defendant has responded, reiterating that the actual tax loss associated with Swetich – $30,126 – is the most appropriate restitution amount, if any (Dkt 448 at 2). Defendant opposes the government's request for including interest of $11,629, pointing out that there is no statutory or case law authority for prejudgment interest in this case (*id.* at 3).

Defendant also opposes the government's new argument that restitution should be applied for losses associated with three other Security Trust clients. Defendant opines that adding to the restitution order at this late stage of this criminal proceeding would severely and unfairly prejudice him (Dkt 448 at 4-7). Moreover, defendant argues that the government has failed to meet its burden of proving that the loss amounts associated with Baeten, Huemer, and Gerstenblatt were actually caused by defendant's conduct. Defendant argues that particularly with respect to Baeten and Huemer, there is no evidence that defendant ever met or spoke with Pinkston, and the mere fact that

5

Pinkston had an opinion letter authored by defendant in his possession does not establish by a preponderance of the evidence that Baeten or Huemer either examined or relied on the opinion letter (*id.* at 8-9). Indeed, defendant points out that two of Baeten's three LOI policies were purchased in 1997 and 1998 and the legal opinion letter in Pinkston's possession was dated November 1999, after Baeten's decision to purchase these policies (*id.* at 9-10).

Defendant concedes that there is more evidence tying his conduct to Gerstenblatt's LOI policy purchase (Dkt 448 at 10). However, defendant argues that the email exchanges on which the government relies were emails defendant sent to parties other than Gerstenblatt (*id.* at 10-11). Defendant asserts there is no evidence that the emails were forwarded or communicated to Gerstenblatt and therefore no credible evidence of reliance or causation (*id.*).

## II. ANALYSIS

### A. *Mandatory Victims Restitution Act*

The parties agree that the source of this Court's power to order restitution in this case is the Mandatory Victims Restitution Act of 1996 (MVRA), which provides that a sentencing court "shall order" a defendant to pay restitution to a "victim" of any covered offense. 18 U.S.C. § 3663A(a)(1). Covered offenses include "any offense committed by fraud or deceit," § 3663A(c)(1)(A)(ii), and the parties do not dispute that the Act encompasses defendant's offense in this case of conspiracy to defraud the United States.

Per the MVRA, a "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18

U.S.C. § 3663A(a)(2). The MVRA's enforcement provision expressly identifies the government as an eligible victim by providing: "[i]n any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution." § 3664(i). *See also Gall v. United States,* 21 F.3d 107, 111 (6th Cir. 1994) (stating that the government may be a victim in those cases in which restitution could be awarded);*United States v. Martin,* 128 F.3d 1188, 1191 (7th Cir. 1997) (citing an "unwavering line of precedent" from the other federal courts of appeals reaching the same conclusion).

The MVRA requires restitution "in the full amount of each victim's losses ... without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). In conspiracy cases, the restitution amount includes all harm caused "by the defendant's criminal conduct in the course of the scheme." § 3663A(a)(2). "[I]f someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction." *United States v. Elson,* 577 F.3d 713, 723 (6th Cir. 2009) (quoting *United States v. Bussell,* 504 F.3d 956, 966 (9th Cir. 2007) (internal quotations omitted)). Conversely, the court must exclude injuries caused by offenses that are not part of the conspiracy of which the defendant has been convicted. *Id.* When a defendant is convicted pursuant to a guilty plea rather than by a jury, the court should look to the plea agreement, the plea colloquy, and other statements made by the parties to determine the scope of the "offense of conviction" for purposes of restitution. *Id.*

The Court must resolve any dispute as to the proper amount or type of restitution by the preponderance of the evidence. 18 U.S.C. § 3664(e). The government bears the burden of demonstrating the amount of the loss sustained by a victim as a result of the offense. *Id.*

If the court finds multiple defendants culpable for the "loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). The restitution amounts imposed must aggregate to the "full amount of each victim's losses." § 3664(f)(1).

Last, "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). Moreover, "[i]f the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief." *Id.*

B. *Application*

Three categories of tax loss related to LOI policy purchases are relevant to the Court's determination under the MVRA of the proper restitutionary relief in this case: the tax loss related to Poch's LOI purchases, the tax loss related to Swetich's LOI purchase, and the tax loss related to LOI purchases by other clients of Security Trust.

(1) Tax Loss Related to Poch's Purchases

The government and defendant agree that there is no longer any tax loss related to Poch's LOI purchases that could properly provide a basis for restitutionary relief. Poch paid the entire liability before defendant's sentencing. The Court cannot properly impose restitution in connection with the Poch purchases.

(2) Tax Loss Related to Swetich's Purchase

In contrast, Swetich's tax liability remains outstanding, even though a settlement between Poch and the IRS resulted in a disallowance of the $90,000 premium associated with Swetich's LOI purchase. The parties agree that the revised amount of the tax assessed Swetich is $30,126. They disagree on whether interest should be a part of this Court's restitution order.

The source of this Court's power to order restitution, the MVRA, provides this Court with no express authority for ordering interest or prejudgment interest as an item of restitution. Nor have the parties identified case law from this circuit that would aid this Court's determination to include prejudgment interest as part of defendant's restitution.

For the proposition that this Court's restitution order may include interest, the government refers this Court only to the decision of the Third Circuit Court of Appeals in *United States v. Jimenez,* 513 F.3d 62 (3d Cir. 2008) (Dkt 428 at 4). However, *Jimenez* concerned conspiracies involving mortgage and bank fraud, which are not conspiracies analogous to defendant's conspiracy to defraud the United States. Indeed, the appellate panel in *Jimenez* observed that "the 'full amount of the victim's loss,' particularly when the victim is a financial institution, includes bargained-for interest and finance charges." *Id.* at 87.

Defendant concedes that several circuits have included interest as part of restitution awards; however, defendant argues that such awards were issued under circumstances not present in this case, for example, where the money comprising the loss was connected to a loan. *See, e.g., United States v. Morgan,* 376 F.3d 1002, 1014 (9th Cir. 2004) (affirming the district court's decision to include interest and finance charges in its determination of the victim banks' loss); *United States v. Shepard,* 269 F.3d 884, 886 (7th Cir. 2001) (holding that "[r]estitution should include interest to

make up for the loss of the funds' capacity to grow ... because the money came from an interest-bearing account"); *United States v. Rochester,* 898 F.2d 971, 982-83 (5th Cir. 1990) (affirming the district court's order to defendant to pay the amount owing on the loan from the date certain plus all interest accruing from that date until the date of payment).

Again, the only restitution the MVRA authorizes for offenses involving property is return of the "property" and, if that is not possible, payment of an amount equal to its value on the date of its loss or the date of sentencing, whichever is higher. 18 U.S.C. § 3663A(b)(1). Interest is only authorized, and therefore may only be ordered, where it is part of the "value of the property." The government has not provided support for this Court to include interest as part of the statutory measure of the "value of the property" taken in this case from the IRS. Therefore, absent statutory authorization, this Court declines to include the interest requested by the government in the restitution ordered for the tax loss related to Swetich's LOI purchase.

(3) Tax Loss Related to Purchases by Other STIC Clients

The third category of tax loss by the IRS relevant to the Court's determination of the proper restitutionary relief is the tax loss related to LOI purchases and deductions by STIC clients Baeten, Huemer and Gerstenblatt.

This Court is unconvinced by the government's late attempt to causally link defendant's conduct to the LOI policy purchases by these other STIC clients. The Court has re-examined the context of defendant's guilty plea to determine the parties' mutual understanding regarding the offense of conviction. While the conspiracy to which defendant pleaded guilty expressly identifies the purchases by Poch and, by implication, Swetich, the government has clearly not met its burden

10

of proving that the losses associated with the purchases by Baeten, Huemer, and Gerstenblatt were caused by this particular defendant's conduct.

The government's Memorandum of Interview of Pinkston, the salesman facilitating the purchases by Baeten and Huemer, indicates that Pinkston "does not recall ever meeting Campbell," "had not seen a legal opinion from Campbell," and "did not request a legal opinion for his clients" (Dkt 428, Exh 2 at ¶¶ 3, 16-17). The causal link the government attempts to establish between defendant's conduct and the purchasing decisions of Baeten and Huemer is too tenuous to support inclusion in defendant's restitution order of the approximated tax losses associated with their purchases.

The link between defendant's conduct and Gerstenblatt's purchase is similarly unconvincing. The mere receipt of Campbell's email by Gerstenblatt's accountant does not demonstrate, by a preponderance of the evidence, that Campbell's email caused Gerstenblatt to purchase an LOI policy from Security Trust. Indeed, defendant informed Gerstenblatt's accountant at the end of the email string provided by the government, "I cannot draft an opinion letter on whether or not this is insurance because that is a factual question and not a legal question for which I can give an opinion" (Dkt 428, Exh 9). Accordingly, the government is not entitled to an order of restitution for any tax loss resulting from Gerstenblatt's purchase.

## III.  CONCLUSION

For the foregoing reasons, defendant's Motion to Alter Judgment (Dkt 427) is denied to the extent that defendant requests this Court impose no restitution and granted to the extent defendant alternatively requests restitution set at $30,126. The Court imposes joint and several restitution upon defendant in the total amount of $30,126.

An Order and Amended Judgment of Sentence consistent with this Opinion will issue.


DATED: December 15, 2009   /s/ Janet T. Neff
                            JANET T. NEFF
                            United States District Judge